IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

GEORGE WHEELER, )
 )
       Plaintiff, )
 )
vs. ) Case No. 16-06104-CV-SJ-ODS
 )
NANCY A. BERRYHILL,[1] )
Acting Commissioner of Social Security, )
 )
       Defendant. )

## ORDER AND OPINION AFFIRMING
## COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying his application for disability insurance benefits. The Commissioner's decision is affirmed.

### I. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is limited to a determination whether the decision is "supported by substantial evidence on the record as a whole. Substantial evidence is less than a preponderance but…enough that a reasonable mind would find it adequate to support the conclusion." *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015) (citations omitted). "As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because we would have decided the case differently." *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) (citation omitted). Though advantageous to the Commissioner, this standard also requires the Court consider evidence that fairly detracts from the final decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2015) (citation omitted). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for former Acting Commissioner Carolyn A. Colvin as the Defendant in this suit.

relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

## II. BACKGROUND

Plaintiff was born in 1965. R. at 28, 113, 320, 351. He has a high school education and some vocational training. R. at 30, 320, 352. Plaintiff previously worked as a laborer and landscaper. R. at 31, 352-53. He applied for disability insurance benefits, alleging a disability onset date of June 30, 2010. R. at 113-14. Plaintiff's application was denied, and he requested a hearing. On May 30, 2012, a hearing was held before an administrative law judge ("ALJ"). R. at 24-50. On June 25, 2012, the ALJ determined Plaintiff was not disabled. R. at 13-20. Plaintiff appealed that decision to the Appeals Council, and his appeal was denied. R. at 1-3. Plaintiff then appealed to this Court. Case No. 13-6120-CV-SJ-ODS.

In August 2014, this Court remanded the matter for further proceedings. R. at 418-20. The Court noted there was "a glaring paucity of medical evidence to support" the ALJ's determination of Plaintiff's residual functional capacity ("RFC"). R. at 418. The Court directed the ALJ to obtain additional information from Plaintiff's doctors, and conduct a new credibility assessment. *Id.* at 2. Upon remand, the Appeals Council vacated the prior ALJ's decision, and directed the ALJ to consolidate Plaintiff's claims files, create a single electronic record, and issue a new decision on the consolidated claim. R. at 424.

In August 2015, another hearing was held, during which Plaintiff testified. R. at 347-67. A supplemental hearing was held in January 2016, to obtain medical expert testimony. R. at 329-46. The ALJ issued a decision in May 2016, finding Plaintiff was not disabled. R. at 301-21. In reaching her decision, the ALJ found Plaintiff had the following severe impairments: fibromyalgia, chronic fatigue syndrome, right shoulder rotator cuff repair in December 2014, carpal tunnel syndrome, depression, and learning disorder/unspecified intellectual disability. R. at 303-04. The ALJ determined Plaintiff had the RFC to "perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he cannot reach overhead but can frequently reach in other directions." R. at 308. Plaintiff can frequently handle, finger, and feel. *Id.* He can frequently climb ladders and stairs, but can only occasionally climb ladders, ropes, and scaffolds. *Id.*

Plaintiff can occasionally balance, stoop, kneel, crouch, and crawl. *Id.* at 308-09. He can frequently tolerate wetness and pulmonary irritants, but can only occasionally tolerate unprotected heights and moving mechanical parts. *Id.* at 309. Plaintiff "can perform simple, routine, repetitive tasks requiring no independent decision making or changes in the work setting." *Id.* He can occasionally interact with coworkers but cannot interact with the public. *Id.* Plaintiff would be off task for up to five percent of the workday. *Id.* Based upon the RFC and the Vocational Expert's ("VE") testimony, the ALJ concluded Plaintiff could work as a collator operator, inserting machine operator, and router. R. at 321. Plaintiff appealed the ALJ's decision to this Court.

### III. DISCUSSION

Plaintiff argues the ALJ's decision must be reversed because the ALJ's RFC did not adequately reflect Wheeler's limitations in that the ALJ (1) did not properly weigh the medical opinions, and (2) erred in evaluating Plaintiff's credibility. One's RFC is the "most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ must base the RFC on "all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).

### (A) Medical Opinions

According to Plaintiff, the three medical opinions in the record contain more severe limitations than the ALJ's RFC. Plaintiff argues the ALJ erred in failing provide adequate reasons for discounting these medical opinions. Plaintiff also contends the ALJ's RFC is not supported by substantial evidence because the ALJ failed to adequately evaluate the medical evidence. Doc. #9, at 17.

### (1) Louis Bein, M.S.

Plaintiff attended two consultative psychological evaluations with Louis Bein, M.S. In January 2015, after the initial consultative evaluation, Bein completed a Medical Source Statement – Mental ("MSSM"), and opined Plaintiff had moderate limitation relating to complex instructions, mild limitation in social functioning, and moderate limitation in the ability to respond appropriately to usual work situations and to changes

3

in a routine work setting. R. at 318, 763-65. In September 2015, Bein completed another MSSM, and opined Plaintiff had marked limitations in carrying out complex instructions and making judgments on complex work related decisions, and moderate limitations in all other areas except mild limitation in interacting appropriately with the public. R. at 318, 856-59. Bein also administered an intelligence quotient ("IQ") test, wherein he concluded Plaintiff's full scale IQ was 52. R. at 854, 858. Bein opined Plaintiff's test performance was below expectations given his "social presentation, presentation, vocabulary, conceptualization, and some of his past activities (for example, working on lawnmowers and driving)." R. at 854. Bein surmised Plaintiff's IQ score "may have been affected by his mood and/or lack of motivation," and his IQ was likely between 65 and 75. R. at 854.

The ALJ gave "little weight" to Bein's opinions because they were based upon Plaintiff's IQ scores and estimates of Plaintiff's IQ scores, which were inconsistent with the medical expert's testimony, Plaintiff's ability to drive and work at a substantial gainful activity level, Plaintiff's description of his daily activities, and the comments that Plaintiff's performance on the IQ test was below Bein's expectations. R. at 318. Plaintiff argues the ALJ failed to adequately weigh Bein's opinion.

The amount of weight given to a non-controlling medical opinion is determined by applying several factors: (1) whether the source examined Plaintiff; (2) the length, nature, and extent of the treatment relationship and frequency of examination; (3) the extent to which the relevant evidence – in particular, medical signs and laboratory findings – supports the opinion; (4) the extent to which the opinion is consistent with the record as a whole; (5) whether the opinion is related to the source's specialty area; and (6) other factors tending to support or contradict the opinion. *Owen v. Astrue*, 551 F.3d 792, 800 (8th Cir. 2008) (quoting 20 C.F.R. §§ 404.1527(d), 416.927(d) and citing *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007)).

Although he evaluated Plaintiff twice, Bein's opinion was based upon an IQ test result that was, according to Bein, "below expectations." Additionally, the IQ test result was inconsistent with medical expert's testimony, Plaintiff's abilities to drive and work, and Plaintiff's self-proclaimed daily activities. The Court reviewed the record and finds substantial evidence supports the ALJ's decision to discount Bein's opinion. The Court

4

also finds the ALJ provided good reasons explaining the weight she afforded Bein's opinion. The Court affirms the ALJ's decision to afford little weight to Bein's opinion.

### (2) <u>Sara Dross-Gonzalez, Psy.D.</u>

After Bein's second evaluation of Plaintiff, Plaintiff's counsel had additional questions regarding Plaintiff's functioning. R. at 683-84. As a result, the ALJ sent Plaintiff's medical records to Dr. Dross-Gonzalez for review. In November 2015, Dr. Dross-Gonzalez answered interrogatories and completed an MSSM. R. at 872-80. Dr. Dross-Gonzalez opined Plaintiff suffered from major depression and an unspecified intellectual disability. R. at 875. She concluded Plaintiff had mild to moderate limitations with regard to understanding, remembering, and carrying out instructions; and mild to moderate limitations in his ability to interact appropriately with supervisors, co-workers, and the public. R. at 872-74. She determined Plaintiff may be off task for twenty percent of the time due to depression and his intellectual deficiency, and he would likely need redirection on an hourly basis at work. R. at 879.

The ALJ gave "little weight to the opinion of Dr. Dross-Gonzalez because it is inconsistent with the testimony of Dr. England, the claimant's adaptive functioning, the fact that there was no indication in the claimant's history of deterioration in ability due to a neurocognitive disorder." R. at 313. The ALJ also discounted Dr. Dross-Gonzalez's opinion "because it was based on an assumption that the claimant would be off task 20% of the time." R. at 319. The ALJ noted Dr. Dross-Gonzalez's assumption that Plaintiff would be off task twenty percent of the time was inconsistent with the testimony of Dr. England, the September 2015 consultative examination findings, Plaintiff's adaptive functioning, and Plaintiff's description of his daily activities. *Id.* Finally, the ALJ afforded little weight to Dross-Gonzalez's opinion because it did not address the differences in Plaintiff's IQ scores, and the possibility his performance was affected by his mood and/or lack of motivation. *Id.*

Plaintiff contends the ALJ's assertion that Dr. Dross-Gonzalez's opinion was based upon an assumption he would be off task twenty percent of the time is not supported by the record. He maintains Dr. Dross-Gonzalez's opinion was not simply based upon her assumption that Plaintiff would be off task twenty percent of the time, but was based upon her review of the medical record and IQ exam. Plaintiff also

argues Dr. Dross-Gonzalez's opinion that he would be off task twenty percent of the time is not inconsistent with the record.

"[O]pinions of nonexamining sources are generally…given less weight than those of examining sources." *Wildman v. Astrue*, 596 F.3d 959, 967 (8th Cir. 2010) (quoting *Willcockson v. Astrue*, 540 F.3d 878, 880 (8th Cir. 2008) and citing 20 C.F.R. § 404.1527(f)). Here, as set forth above, the ALJ provided several adequate bases for discounting the opinion of Dr. Dross-Gonzalez. Accordingly, the Court affirms Defendant's decision to afford little weight to Dr. Dross-Gonzalez's opinion.

### (3) Thomas England, Ph.D.

The ALJ obtained another medical expert, Thomas England, Ph.D., to review Plaintiff's medical files and testify at a supplemental hearing in April 2016. R. at 313-14, 331-42. Dr. England testified that although Plaintiff's alleged onset date was June 30, 2010, he was not treated for a mental impairment until January 4, 2011. R. at 313, 335. Although Plaintiff was diagnosed with major depression, Dr. England noted medication controlled the symptoms. R. at 313, 335-37. Dr. England opined Plaintiff's "depressive conditions" were "well controlled" while he is on anti-depressant medication. R. at 337. Dr. England also opined Plaintiff's low IQ score (obtained through Bein's testing) may have been the result of a pain disorder, lack of medication, or low level engagement, motivation, or effort. R. at 314, 338. Dr. England concluded Plaintiff was not markedly impaired; rather, he was mildly impaired with regard to daily living activities, and moderately impaired with regard to social functioning and concentration, persistence, and pace. R. at 314, 338. Dr. England stated Plaintiff would not be off task twenty percent of the time, but would be off task five or ten percent of the time. R. at 314, 340.

The ALJ afforded "great weight" to Dr. England's opinion because it was "consistent with the material medical evidence in the file and notes from treating and examining medical professionals cited in his testimony." R. at 314. The ALJ further noted Dr. England "had the opportunity to review all the relevant medical evidence prior to offering his opinion and thoroughly discussed the claimant's mental treatment including inconsistencies with other evidence in the record." *Id.* Although given the opportunity to cross-examine Dr. England during the supplemental hearing in April 2016, Plaintiff's attorney chose not to do so. R. at 314, 340.

Plaintiff contends the ALJ erred in not addressing Dr. England's testimony that there was a "very significant decrement in intellectual functioning," and Plaintiff's reports of pain or dizziness could have impacted his IQ scores. Doc. #9, at 26. But the ALJ addressed Dr. England's opinions regarding Plaintiff's intellectual functioning and his IQ scores. The ALJ specifically noted "Dr. England indicated the claimant had a learning disorder and not a cognitive disorder" that did not meet a listing. R. at 314. According to the ALJ, Dr. England "indicated no physician noted cognitive deficits consistent with a 30 to 40% IQ loss." *Id.* And Dr. England noted there were several possible reasons why Plaintiff's IQ score was significantly lower than expected. *Id.*

Plaintiff also argues Dr. England's testimony supported greater limitations than those included in the ALJ's RFC. Doc. #9, at 26-27. Plaintiff, however, does not specify what testimony Dr. England provided that would have resulted in greater limitations. Instead, Plaintiff points to other physician's records related to Plaintiff's pain and ability to concentrate to support his argument. *Id.* The Court reviewed the record and finds substantial evidence supports the ALJ's decision to afford great weight to Dr. England's opinion. The Court also finds the ALJ provided good reasons explaining the weight she afforded Dr. England's opinion. Therefore, the Court affirms Defendant's decision to afford great weight to Dr. England's opinion.

### B. Plaintiff's Credibility

Plaintiff also maintains the ALJ erred in evaluating his credibility. The familiar standard for analyzing a claimant's subjective complaints is set forth in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984):

> While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced. The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.
>
> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence

7

> presented relating to subjective complaints, including the claimant's prior
> work record, and observations by third parties and treating and examining
> physicians relating to such matters as:
>
> 1. The claimant's daily activities;
> 2. the duration, frequency and intensity of the pain;
> 3. precipitating and aggravating factors;
> 4. dosage, effectiveness and side effects of medication;
> 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective
> complaints solely on the basis of personal observations. Subjective
> complaints may be discounted if there are inconsistencies in the evidence
> as a whole.

*Id.* at 1322. The ALJ "need not explicitly discuss each *Polaski* factor...[t]he ALJ need only acknowledge and consider those factors before discounting a claimant's subjective complaints." *Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004) (citations omitted); *see also Samons v. Apfel*, 497 F.3d 813, 820 (8th Cir. 2007).

The ALJ properly analyzed Plaintiff's credibility. She found, and discussed at length, the objective medical evidence did not support the severity of Plaintiff's alleged disabling symptoms and limitations. R. at 315-17. The ALJ considered the opinions of Dr. England and Bein when evaluating Plaintiff's allegations of disabling mental impairments. R. at 315-16. The ALJ contemplated Plaintiff's continued employment as a laborer and landscaper after the onset date. R. at 316-17. The ALJ stated Plaintiff's work activity after the onset date "is indicative of an ability to work and inconsistent with his allegation he was completely disabled as of the alleged onset date and thereafter." R. at 317. The ALJ also found Plaintiff had minimal treatment for physical and mental impairments in 2012 and 2013. R. at 316. And the ALJ properly noted Plaintiff was not, at the time of the ALJ's opinion, receiving treatment for mental health issues but was taking medication, which controlled the symptoms. *Id.*

The ALJ acknowledged and considered the *Polaski* factors. R. at 21-27. The ALJ is not required to discuss each factor in turn, but must merely consider the *Polaski* factors. *See Eichelberger*, 390 F.3d at 590. To the extent Plaintiff argues the medical evidence could support a decision contrary to the ALJ's, the Court will not substitute its judgment for that of the ALJ. *See Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003) (stating "[t]he credibility of a claimant's subjective testimony is primarily for the

8

ALJ to decide, not the courts."). The Court finds the ALJ did not err in analyzing Plaintiff's credibility.

## IV. CONCLUSION

The Court concludes there is substantial evidence in the record as a whole to support the ALJ's decision. The Commissioner's decision denying benefits is affirmed.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: May 2, 2017                    UNITED STATES DISTRICT COURT